UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

JONATHAN DOUTHARD )
)
Plaintiff, )
)
vs. ) CV-97-PT-1372-E
)
CHANDELEUR HOMES, INC. )
)
)
)
Defendant. )

FILED
98 FEB -9 PM 3: 02
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
FEB 0 9 1998

MEMORANDUM OPINION

I. INTRODUCTION

Jonathan Douthard ("Douthard") claims he was denied employment on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. Douthard, a black male, applied for a position with Defendant Chandeleur Homes, Inc. ("Chandeleur") on two occasions in 1996. He alleges that his application, properly filed, was denied because he is black. Douthard claims there were openings on the day he applied, he was qualified for the position and the defendant hired two white males instead.

## II.  FACTS[1]

Jonathan Douthard arrived at Defendant's plant 3 in Boaz, Alabama in hopes of obtaining employment. A friend and former supervisor, Randy Allred, notified him of the job opportunities at the plant and brought him to the facility on October 31, 1996. Plaintiff filled out an application and gave it to Allred to pass it on to his supervisor and others.[2] Allred notified plaintiff at approximately 8:30 AM that, to his knowledge, there were no vacancies, but to remain at the guard shack in hopes one would occur. Forty-five minutes later a woman emerged from the plant and told the guard that she was quitting. The woman, Cynthia Hare, had worked for supervisor Roger Downs. Douthard overheard over a walkie-talkie radio Downs acknowledge that he had just lost an employee. Douthard also heard someone tell Downs that Allred had a friend at the guard shack, whose application was in the conference room, if he wanted to talk to him. Downs responded that he would go out and talk to him. Minutes later, Douthard saw a man walk out to the guard shack, look around, and without speaking to Douthard or anyone else, return to the plant. Thirty minutes later, Downs returned to the shack, looked inside, and again returned to the plant without saying anything

---

[1] The operable set of facts, for purposes of summary judgment are based on those recounted by the plaintiff in his complaint, brief and evidentiary submissions. Any conflicts or disputes in testimony are resolved in favor of the plaintiff as required by the law of the Eleventh Circuit.

[2] Chandeleur claims it does not have an employment application from Douthard.

to plaintiff.

At 11:45 that morning, Downs called the guard shack and told the guard that there were no openings. When Allred inquired as to the status of Douthard, his supervisor, Ricky Walden, told him that when Downs went out to the guard shack he saw nobody but a black man. Downs assumed, that since Allred was white that the friend he had told him about would also be white. Therefore, he concluded that the friend Allred spoke of had already left. Douthard was never interviewed nor offered employment.

The plant has approximately 150 employees. As of October 31, 1996, only one was black. Plaintiff has been employed at several heavy construction jobs and spent two and one half years operating a shear press machine at Trinity Industries. Defendant hires people from all skill levels and vocational backgrounds since they provide job training for any new hires. Two individuals were terminated on October 31, 1996; Howard Nelson, a white male and Cynthia Hare, a white female. On November 1, 1996, two white males were hired to fill those vacancies; Benjamin Genaut and Jody Wilson. None of these four employees provided Chandeleur with a written application for employment. Chandeleur received five written applications on the day Douthard applied for the position.

It is unclear to the court when Douthard filed an EEOC Charge of Discrimination on. He was issued a Right to Sue letter by the EEOC on March 6, 1997. On June 2, 1997 Douthard filed this complaint. The lawsuit has been timely filed according to the requirements set forth in 42 U.S.C.§ 1981 and §2000 (e) <u>et. seq</u>.

Apparently, plaintiff had applied for a job with Chandeleur on October 18, 1996 at the guard house for plant 1. He asked that he be contacted for any position that came available for which he might be qualified. He was never contacted or interviewed. Plaintiff makes no reference to this even in its response brief. Chandeleur, in its brief talks about an application made by Douthard on October 4 and no mention of anything on the 18th.

### III. CONTENTIONS OF THE PARTIES

**A. Defendant Chandeleur's Contentions.**

Chandeleur contends that it did not discriminate against Mr. Douthard, in his application for employment, on the basis of his race. Douthard does not make out a prima facie case of race discrimination. There were no openings in plant 3 on October 31, 1996. No one was hired to work at plant 3 on that day. Downs testified that he had no vacancies on October 31, 1996. He had already hired two people the day before, but as a courtesy to

Walden and Allred agreed to give Douthard a courtesy interview and tell him to try again another day. Downs maintains that he has interviewed and hired African-Americans in the past.

Even if Douthard could establish a prima facie case of discrimination, Chandeleur has articulated legitimate non-discriminatory reasons for not hiring him. First, there were no vacancies. The hiring process looks only at the applications available on the day a vacancy arises and does not look back over old applications. Therefore, Downs' gesture to provide a courtesy interview was as far as Douthard could have gotten on that day as there were no positions available.

Finally, Chandeleur contends that Douthard cannot demonstrate that its articulated reasons are pretext and that race discrimination motivated the decision not to hire him.

### B. Plaintiff Douthard's Contentions.

Douthard contends that there is ample direct and indirect evidence proving Chandeleur denied him employment on account of his race. Plaintiff points to Downs' behavior as direct evidence of its discriminatory intent. Downs knew that Allred's friend was waiting in the guardhouse, seeking employment at Plant 3. Downs knew that Allred was white. Downs went looking for

Allred's friend on two separate occasions and saw only a black man sitting there waiting. Downs assumed that, since Allred was white, this black man could not have been the man to whom Allred referred as his friend looking for employment. Douthard contends that had he been white, sitting in that guardhouse, Downs would have interviewed him and employed him.

Douthard argues that he makes out a prima facie case of race discrimination through an indirect evidence approach as well. First, Jonathan Douthard is a black man, a racial minority. Second, he was qualified for almost any position defendants might have offered.[3] Third, Douthard was not afforded an interview and was not hired. And finally, after rejecting plaintiff, Chandeleur continued to accept applications from person of his qualifications. The plaintiff offers six applications of individuals who applied for positions the same day as plaintiff.

While the plaintiff concedes that Chandeleur met its extremely light burden of articulating non-discriminatory reasons for not hiring him (no vacancies, never received an application), plaintiff can refute these proffered reasons and show discriminatory intent. First, plaintiff testified at deposition

---

[3] According to Allred, a former supervisor of the plaintiff's, Douthard was qualified for work at plant 3. Anyone who works hard is qualified since they provide on the job training for all new hires.

6

that he submitted a written application on October 31, 1996. Moreover, defendant admits that individuals can be hired without submitting an application. Second, the 1996 gross hours report indicates that Cynthia Hare and Howard Nelson both ended their employment on October 31, 1996. The next day, two white males were hired to replace them, Benjamin Genaut and Jody Wilson. None of these four employees submitted written application.

Douthard points to Downs' conduct as evidence of pretext and discriminatory intent. Downs admits that the reason he did not interview Douthard was because he was black. He assumed that Allred's friend was white. When he saw a black man in the guard shack where Allred's friend was supposed to be, he assumed that the friend had left. Downs' conduct and mind-set, combined with the fact that only one out of one hundred fifty employees was black amounts to sufficient evidence that race discrimination motivated defendant's failure to hire Douthard.

## IV. COURT'S CONCLUSION

Upon considering the arguments raised in the parties' briefs, the pleadings and the evidence submitted, the court concludes that the motion for summary judgment will be denied.

    **DONE** and **ORDERED** this 9th day of Feb., 1998

                                      ROBERT B. PROPST
                      SENIOR UNITED STATES DISTRICT JUDGE